UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

MARCUS O. ALLEN,

*Plaintiff,*

v.

CHRISTOPHER A. WRAY,
Director, Federal Bureau of Investigation,

*Defendant.*

Case No. 0:22-cv-04536-MGL

**MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

# CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

     A.    Restrictions on Access to Classified Information .................................... 2

     B.    This Lawsuit ............................................................................................ 4

STANDARDS ......................................................................................................... 4

     A.    Federal Rule of Civil Procedure 12(b)(1) ............................................... 4

     B.    Federal Rule of Civil Procedure 12(b)(6). .............................................. 5

ARGUMENT ........................................................................................................... 5

I.     The Court lacks jurisdiction to review the suspension of Mr. Allen's clearance. .............. 6

II.    Mr. Allen must follow the remedial processes in the Civil Service Reform Act. ............ 10

III.   Mr. Allen's challenge to the adjudicatory guidelines is not ripe. ..................................... 13

IV.   Mr. Allen's claims fail on the merits. ............................................................................... 16

CONCLUSION ....................................................................................................... 20

# AUTHORITIES

## Cases

*Am. Fed. of Gov't Emps. v. Off. of Special Couns.*,
1 F.4th 180 (4th Cir. 2021) ......................................................................... 14, 16

*Arnett v. Kennedy*,
416 U.S. 134 (1974) ........................................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 5

*Becerra v. Dalton*,
94 F.3d 145 (4th Cir. 1996), *cert. denied,* 519 U.S. 1151 (1997) ..................... 7, 8, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 5

*Bennett v. SEC*,
844 F.3d 174 (4th Cir. 2016) ........................................................................... 11

*Campbell v. McCarthy*,
952 F.3d 193 (4th Cir. 2020) ........................................................................... 7, 8

*Ciralsky v. CIA*,
No. 1:10-cv-911, 2010 WL 4724279 (E.D. Va. Nov. 15, 2010), *aff'd sub nom. Ciralsky v. Tenet*, 459 F. App'x 262 (4th Cir. 2011) ........................................................... 8

*Connick v. Myers*,
461 U.S. 138 (1983) ........................................................................................ 17

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) ........................................................................... 16

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) .................................................................................... 6, 7, 18

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017) ........................................................................... 16

*El-Ganayni v. U.S. Dep't of Energy*,
591 F.3d 176 (3d Cir. 2010) ............................................................................. 8, 9

*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012) ..................................................................................... 10, 11, 12

*Fleming v. Spencer*,
718 F. App'x 185 (4th Cir. 2018) .................................................................... 10, 11

*Garcetti v. Ceballos,*
　547 U.S. 410 (2006) ................................................................................... 17, 18

*Hall v. Clinton,*
　235 F.3d 202 (4th Cir. 2000) .............................................................................. 11

*Hegab v. Long,*
　716 F.3d 790 (4th Cir. 2013) ............................................................................ 7, 8

*Holder v. Humanitarian Law Project,*
　561 U.S. 1 (2010) ............................................................................................... 18

*Kirby v. City of Elizabeth City,*
　388 F.3d 440 (4th Cir. 2004) .............................................................................. 17

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC,*
　713 F.3d 187 (4th Cir. 2013) ........................................................................ 14, 16

*Lewitus v. Colwell,*
　479 F. Supp. 439 (D. Md. 1979) ........................................................................ 19

*Liverman v. City of Petersburg,*
　844 F.3d 400 (4th Cir. 2016) .............................................................................. 17

*Miller v. Brown,*
　462 F.3d 312 (4th Cir. 2006) .............................................................................. 14

*Mowery v. Nat'l Geospatial Intel. Agency,*
　42 F.4th 428 (4th Cir. 2022), *cert. denied*, No. 22-560, 2023 WL 2123790
　(U.S. Feb. 21, 2023) .......................................................................................... 7, 8

*Mowery v. Nat'l Geospatial Intel. Agency,*
　550 F. Supp. 3d 303 (E.D. Va. 2021), *aff'd*, 42 F.4th 428 (4th Cir. 2022) ................ 8

*Pickering v. Board of Educ.,*
　391 U.S. 563 (1968) ........................................................................................... 17

*Rogers v. Dep't of Def.,*
　122 M.S.P.B. 671 (2015) .................................................................................... 12

*San Filippo v. Bongiovanni,*
　961 F.2d 1125 (3d Cir. 1992) ............................................................................. 19

*Scoggins v. Lee's Crossing Homeowners Ass'n,*
　718 F.3d 262 (4th Cir. 2013) .............................................................................. 13

*Snepp v. United States,*
　444 U.S. 507 (1980) ........................................................................................... 18

*South Carolina v. United States*,
  912 F.3d 720 (4th Cir. 2019) .................................................................. 14, 15

*U.S. Civil Serv. Comm'n v. Nat'l Assoc. of Letter Carriers AFL-CIO*,
  413 U.S. 548 (1973) ............................................................................... 19

*United States ex rel. Vuyyuru v. Jadhav*,
  555 F.3d 337 (4th Cir. 2009) ................................................................. 4, 5

*United States v. Fausto*,
  484 U.S. 439 (1988) ............................................................................. 10, 12

*Vaughan v. Ky. Army Nat'l Guard*,
  No. 3:12-cv-0035, 2013 WL 211075 (E.D. Ky. Jan. 18, 2023) ............... 15, 16

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) ............................................................................. 18, 19

*Waters v. Churchill*,
  511 U.S. 661 (1994) ................................................................................ 18

*Wild Va. v. Council on Env't Quality*,
  56 F.4th 281 (4th Cir. 2022) ................................................................. 14, 15

*Zummer v. Sallet*,
  37 F.4th 996 (5th Cir. 2022), *cert. denied*, No. 22-443 (U.S. Mar. 20, 2023) ................... 12, 13

## Statutes

5 U.S.C. § 1214 ..................................................................................... 10

5 U.S.C § 2108 ...................................................................................... 11

5 U.S.C. § 2301 ..................................................................................... 10

5 U.S.C. § 2302 ..................................................................................... 10

5 U.S.C. § 7511 ..................................................................................... 11

5 U.S.C. § 7512 ................................................................................. 10, 12

5 U.S.C. § 7513 ................................................................................. 10, 12

5 U.S.C. § 7703(b)(1) ........................................................................ 10, 12

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................. 4

iv

**Regulations**

Exec. Order No. 12,968, *Access to Classified Information*,
60 Fed. Reg. 40,245 (Aug. 2, 1995).................................................................... 2, 3, 15

Exec. Order No. 13,467, *Reforming Processes Related to Suitability for Government*
*Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified*
*National Security Information*,
73 Fed. Reg. 38,103(June 30, 2008) .......................................................................... 3

# INTRODUCTION

Plaintiff Marcus Allen is a Federal Bureau of Investigation ("FBI") staff operations specialist, a position that requires a top-secret security clearance to access classified information. In early 2022, his clearance was temporarily suspended because the FBI determined that he had indicated support for the January 6, 2021, attack on the United States Capitol, which raised concerns about his eligibility to safeguard classified information. Without an active clearance, Mr. Allen cannot perform his work, and thus is suspended without pay. The FBI's investigation into his security clearance remains ongoing, with a final determination whether his clearance should be reinstated or revoked yet to be reached. Unwilling to wait for that determination, Mr. Allen sued on December 15, 2022, alleging that the FBI violated his First Amendment rights in suspending his security clearance and that one of the guidelines for denying and revoking security clearances is unconstitutionally vague. His case should be dismissed.

At least three separate jurisdictional bars prevent Mr. Allen from bringing his claims in this Court. First, he challenges the FBI's decision to suspend his security clearance, which presents a nonjusticiable question about national security that is constitutionally committed to the Executive Branch. Second, Congress in the Civil Service Reform Act established the exclusive means by which covered employees like Mr. Allen may seek redress for unfavorable personnel actions, and it does not permit Mr. Allen to bring this suit. Finally, his claims are unripe. His vague and sparse allegations show that his case is not yet concrete enough for meaningful judicial review, and the application of the guideline he challenges will not be final until the FBI completes its investigation and issues a final determination about his clearance.

Further, even on the pleadings, Mr. Allen's claims are meritless. He fails to state a First Amendment claim because he identifies no speech that he contends is being unjustly punished. And as far as he alleges that the challenged guideline punishes him for showing sympathy to those

who attacked the Capitol on January 6 (something he alleges he has not said and does not believe), his claims would fail because the government's long-recognized compelling interest in safeguarding sensitive national security information far outweighs his right as a federal employee to express such views while holding a clearance. And his vagueness challenge fails because the guideline uses terms with well-known meanings that would put an ordinary person on adequate notice of what might raise a security concern and lead to clearance revocation.

## BACKGROUND

### A.    Restrictions on Access to Classified Information

Government employees cannot be granted access to classified information unless they meet three criteria: they must (1) be determined "eligible" upon a favorable adjudication of a background investigation, (2) have a demonstrated need to know the information, and (3) have signed a nondisclosure agreement. Exec. Order No. 12,968, § 1.2, *Access to Classified Information*, 60 Fed. Reg. 40,245, 40,250 (Aug. 2, 1995). Relevant here, employees will not be deemed eligible to access classified information under the first criterion unless their "personal and professional history affirmatively indicates loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment, as well as freedom from conflicting allegiances and potential for coercion, and willingness and ability to abide by regulations governing the use, handling, and protection of classified information." *Id.* § 3.1(b). The determination whether an employee satisfies these requirements is "discretionary" and "based on judgments by appropriately trained adjudicative personnel." *Id.*

The Director of National Intelligence has formulated guidelines for assessing initial and continued eligibility to access classified information. Ex. 1, *Security Executive Agent Directive 4:*

2

*National Security Adjudicative Guidelines* at 5 (June 8, 2017) ("*Guidelines*").[1] These guidelines employ a "whole-person" approach that calls for "a careful weighing of a number of variables of an individual's life to make an affirmative determination that the individual is an acceptable security risk." *Id.* at 6. A favorable adjudication will result only when "eligibility is clearly consistent with the interests of national security" and "[a]ny doubt" must be "resolved in favor of the national security." *Id.*

There are thirteen guidelines. The first one, *Guideline A: Allegiance to the United States*, is at issue here. It reflects the concern that one's willingness to safeguard classified information is "in doubt if there is any reason to suspect an individual's allegiance to the United States." Ex. 1, *Guidelines* at 8. And it is based in part on the assessment that an "individual who engages in acts against the United States or provides support or encouragement to those who do has already demonstrated willingness to compromise national security." *Id.* Among the conditions that may disqualify an individual from having access to classified information under this guideline are "support of . . . or advocacy of any act of sabotage, espionage, treason, terrorism, or sedition against the United States" and "sympathy with persons or organizations that advocate, threaten, or use force or violence, or use other illegal or unconstitutional means, in an effort to . . . prevent Federal . . . government personnel from performing their official duties." *Id.*

---

[1]    Exec. Order No. 12,968, § 3.1(f) (assigning the Security Policy Board to "develop a common set of adjudicative guidelines for determining eligibility for access to classified information"); *see also* Exec. Order No. 13,467, § 2.4(a), *Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information*, 73 Fed. Reg. 38,103, 38,106 (June 30, 2008) (reassigning these duties to the Security Executive Agent); *id.* § 2.3(c)(ii) (designating the Director of National Intelligence as the Security Executive Agent).

### B.     This Lawsuit

The complaint allegations are taken as true for purposes of this motion. Since 2015, Mr. Allen has been a staff operations specialist with the FBI, where he supports the Joint Terrorism Task Force at the Charlotte, North Carolina Field Office. Compl. ¶ 7, ECF No. 1. On January 10, 2022, he was informed that his top-secret security clearance was being suspended pending further investigation after the FBI's Security Division learned that he had espoused views and promoted information that "indicates support for the events of January 6th"—a reference to the attack on the United States Capitol that disrupted a joint session of Congress in the process of affirming the 2020 presidential election results. *See id.* ¶¶ 9–10. On February 17, 2022, Mr. Allen was placed on administrative leave without pay due to the suspension of his clearance. *Id.* ¶ 12.

Mr. Allen, who insists that he did not support the events of January 6 "in any material way" and that he has not expressed support or sympathy for "any unlawful activity that occurred on January 6," *id.* ¶¶ 20–21, claims that the temporary suspension of his security clearance violates his constitutional rights in several ways. First, he alleges that the adjudicatory guideline regarding loyalty to the United States is overbroad in violation of the First Amendment, both on its face and as applied to him (Counts One and Two). Second, he argues that the same adjudicatory guideline imposes unconstitutional content- and viewpoint-based restrictions, both facially and as applied (Count Four and Five). Third, he contends the adjudicatory guideline is unconstitutionally vague (Count Three). Finally, he argues that his security clearance was temporarily suspended as retaliation for protected speech (Count Six).

### STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss any case if it lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing subject matter jurisdiction when

contested. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). The Court is not limited to the pleadings in ruling on a Rule 12(b)(1) motion to dismiss. *Id.* at 348.

### B.    Federal Rule of Civil Procedure 12(b)(6).

A complaint also is subject to dismissal if it fails to allege facts that state a plausible claim for relief rising "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted). Legal conclusions, "naked assertions devoid of further factual enhancement," and "formulaic recitation[s] of the elements of a cause of action" cannot state a plausible claim. *Id.* (citations omitted); *Twombly*, 550 U.S. at 555.

## ARGUMENT

Mr. Allen's claims suffer several jurisdictional and merits-based flaws. On the jurisdictional front, there are three independent reasons why all six claims must be dismissed. First, this Court lacks jurisdiction to review the suspension of Mr. Allen's security clearance, a determination that implicates national security considerations constitutionally committed to the Executive Branch's exclusive discretion. Second, he has failed to pursue the exclusive means that Congress established for federal employees like him to challenge personnel actions through the Civil Service Reform Act. Third, the suspension of his security clearance is a preliminary action that may never be finalized depending on the outcome of the FBI's investigation, making his challenges to the adjudicatory guideline unripe.

The claims fail on the merits too. Mr. Allen has failed to adequately plead his First Amendment claims by even identifying the speech he contends is being unconstitutionally punished. If he means to argue that government employees have a First Amendment right to hold a top-secret security clearance while expressing sympathy to groups who use violence to disrupt

government operations, he is wrong. The government's compelling interest in safeguarding classified information far outweighs any such speech right on the part of a government employee. And the adjudicatory guideline for loyalty to the United States easily clears the minimal specificity requirements for conditions on federal employment.

## I.     The Court lacks jurisdiction to review the suspension of Mr. Allen's clearance.

Mr. Allen asks this Court to order the FBI to deem him eligible to access top-secret classified information and return him to his position where he will have access to such information. *See* Compl. at 10 (seeking an order that the FBI "reinstat[e] Plaintiff's security clearance and return[] Plaintiff to active duty with the FBI"). As a constitutional matter, this is not an appropriate area for judicial review.

Under *Department of Navy v. Egan*, predictive national-security judgments associated with security clearances are constitutionally committed to the expertise and discretion of the Executive Branch. 484 U.S. 518 (1988). In *Egan*, the plaintiff was terminated after he failed to obtain a security clearance, and he sought review by the Merit Systems Protection Board ("MSPB"). *Id.* at 521–22. The Supreme Court held that the Constitution vests the Executive Branch with presumptively sole "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position . . . that will give that person access to such information." *Id.* at 527 (citation omitted). Determining one's eligibility to access classified information involves the Executive Branch's "attempt to predict . . . possible future behavior and to assess whether . . . [an individual] might compromise sensitive information." *Id.* at 528. The Court reasoned that this "[p]redictive judgment" was best left to "those with the necessary expertise in protecting classified information" and "must be committed to the broad discretion of the agency responsible." *Id.* at 529. As a result, "it is not

reasonably possible for an outside nonexpert body to review the substance of such a decision," *id.*, and courts lack jurisdiction to review such "sensitive and inherently discretionary judgment call[s]," *id.* at 527. Following *Egan*, the Fourth Circuit has repeatedly held that courts do not have jurisdiction to review these sorts of predictive national security judgments because "a court should not be put in the position of second-guessing the discretionary judgment of an executive agency assessing national security risks." *Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013) (collecting additional cases); *see also Campbell v. McCarthy*, 952 F.3d 193, 202-03 (4th Cir. 2020).

That fact that this case involves the temporary suspension of a clearance pending an investigation rather than a fully denied or revoked clearance does not change the analysis. The Fourth Circuit held that jurisdiction over these matters turns "not on whether the decision at issue was technically labeled a security-clearance determination, but on whether the decision involved the same sort of executive authority, predictive judgments, and underlying national-security concerns at issue in *Egan*." *Mowery v. Nat'l Geospatial Intel. Agency*, 42 F.4th 428, 436 (4th Cir. 2022) (citation omitted), *cert. denied*, No. 22-560, 2023 WL 2123790 (U.S. Feb. 21, 2023).

In *Becerra v. Dalton*, for example, the Navy initiated a security investigation of the plaintiff based on allegedly false grounds, subsequently suspended his security clearance, and ultimately removed him based on his lack of a clearance. 94 F.3d 145, 148 (4th Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997). Recognizing that *Egan* foreclosed review of the revoked clearance and resulting removal, the plaintiff instead sought review of the Navy's initiation of an investigation into his potential security risk. *Id.* at 149. But the court firmly rejected that argument, finding "that the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference." *Id.* Both "go[] to the very heart of the 'protection of classified information [that] must be committed to the broad discretion of the agency responsible.'" *Id.*

Likewise, in *Campbell*, the Fourth Circuit rejected the plaintiff's argument that judicial review was available over the Army's decision not to assign him to unclassified duties pending an internal review of the suspension of his security clearance. 952 F.3d at 206–07. Rejecting the plaintiff's argument that *Egan* precluded judicial review only of the clearance suspension decision itself, as opposed to the secondary decision to deny him unclassified duties, the Court held, "[b]ecause review of any of Campbell's claims requires review of the suspension of his security clearance—a review that necessarily 'goes to the very heart of the protection of classified information'—*Egan* deprived the district court of subject matter jurisdiction to review each of Campbell's claims." *Id.* at 207 (quoting *Becerra*, 94 F.3d at 149).

Nor does it matter that Mr. Allen frames his challenge to the suspension of his clearance under constitutional terms. The Fourth Circuit has held that courts must refuse jurisdiction over constitutional claims that ultimately "challenge[] the merits" of an agency's individualized exercise of predictive judgment, describing them as "unsuccessful attempts to circumvent the undisputed proposition that we will not review the merits of [such a] decision." *Hegab*, 716 F.3d at 795; *see also Mowery v. Nat'l Geospatial Intel. Agency*, 550 F. Supp. 3d 303, 312 n.13 (E.D. Va. 2021) ("[A] plaintiff cannot 'circumvent' *Egan* by classifying a challenge to a security clearance decision as a constitutional claim."), *aff'd*, 42 F.4th 428, 436 (4th Cir. 2022); *Ciralsky v. CIA*, No. 1:10-cv-911, 2010 WL 4724279, at *3 (E.D. Va. Nov. 15, 2010) (describing plaintiffs' attempted distinction between the actual revocation of his clearance and alleged constitutional violations as "illusory"), *aff'd sub nom. Ciralsky v. Tenet*, 459 F. App'x 262 (4th Cir. 2011). Courts outside the Fourth Circuit have likewise held that constitutional claims challenging the merits of security clearance determinations are not justiciable. *See El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176,

183-86 (3d Cir. 2010) (holding that constitutional claims are nonjusticiable when they require a court's review of the merits of a security decision).

Mr. Allen's challenge takes direct aim at the predictive judgments that led to the FBI's decision to suspend his clearance and is therefore nonjusticiable under *Egan*. Even at face value, his challenges to the adjudicatory guideline call for judicial review of the merits of the predictive judgments that the Director of National Intelligence used to formulate the guideline. In arguing, for example, that the considerations in the adjudicatory guidelines are not narrowly tailored to advance a compelling government interest, Mr. Allen necessarily asks the Court to second-guess the Director's assessment that a security concern is presented by expressed sympathy with persons who use force or violence or prevent federal government officials from performing their duties. *See* Ex. 1, *Guidelines* at 8. That is precisely the type of judgment that *Egan* commits to the Executive Branch.

Moreover, while Mr. Allen attempts to style his causes of action as constitutional challenges to the adjudicatory guidelines, his allegations supporting those causes of action contend at bottom that the FBI was simply wrong in its individualized determination to suspend his clearance. His case apparently turns on his contention that the FBI is factually wrong in its conclusion that he said or did anything afoul of the guidelines, Compl. ¶¶ 13, 19–21, 35, not that allegedly constitutionally infirm guidelines themselves caused him any injury by requiring the suspension of his clearance. Thus, despite the constitutional dressing, Mr. Allen seeks to challenge and undo the merits of the FBI's individualized exercise of judgment as to his security clearance, which this Court lacks jurisdiction to entertain.

**II.    Mr. Allen must follow the remedial processes in the Civil Service Reform Act.**

Mr. Allen's claims fall outside the Court's jurisdiction for a second, independent reason. The Civil Service Reform Act ("CSRA") provides the exclusive framework for Mr. Allen to seek redress of unfavorable personnel actions, and it leads first through administrative avenues before eventual judicial review. In the CSRA, Congress "established a comprehensive system for reviewing personnel action taken against federal employees" who are covered by that statutory scheme. *United States v. Fausto*, 484 U.S. 439, 455 (1988). More serious "adverse actions"— including, relevant here, suspensions for more than 14 days, 5 U.S.C. § 7512(a)—may generally be appealed directly to the MSPB, with judicial review of the MSPB's decision in the Federal Circuit, *see id.* §§ 7513(d), 7703(b)(1).[2]

The Supreme Court has definitively held that the CSRA provides the exclusive means by which a covered federal employee may challenge adverse employment actions (aside from limited exceptions for certain types of discrimination claims not at issue here). *See Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012). It thus deprives district courts of jurisdiction to hear challenges to covered employment actions. As the Supreme Court put it, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse

---

[2]    A challenge to a less severe "personnel action" may generally be sought through agency administrative or negotiated grievance procedures, through an equal employment opportunity complaint if a prohibited discriminatory basis is alleged, or from the Office of Special Counsel ("OSC") if the applicant or employee alleges a qualifying prohibited reason for the action, known as a "prohibited personnel practice." 5 U.S.C. §§ 1214(a)(3), 2302. The CSRA defines "personnel action" broadly to extend beyond disciplinary or predisciplinary corrective actions. *See* 5 U.S.C. § 2302(a)(2)(A). Congress authorized OSC to investigate whether a challenged "personnel action" constitutes a "prohibited personnel practice []," including the violation of a law that directly concerns "fair and equitable treatment" of federal employees "with proper regard for their . . . constitutional rights." *Id.* §§ 1212(a)(2), 1214(a)(1)(A), 2301(b)(2), 2302(b)(1)–(14). OSC thus has jurisdiction to investigate an employee's claim that a personnel action violated the Constitution. *See, e.g., Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) (per curiam).

employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11–12. The Supreme Court has described this as an "implied preclusion of district court jurisdiction." *Id.* at 12; *see also Bennett v. SEC*, 844 F.3d 174, 180-81 (4th Cir. 2016) (discussing *Elgin*). The Fourth Circuit has likewise held that "the CSRA constitutes the exclusive remedy for claims arising out of federal employment." *Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000).

The CSRA applies similarly where an employee challenges an employment action on constitutional grounds. In *Elgin*, for example, the Supreme Court required the plaintiff federal employees to challenge their adverse employment actions through the CSRA's review scheme rather than suing in district court where they claimed that they were discharged because of an unconstitutional federal statute. 567 U.S. at 5. Similarly, in *Fleming v. Spencer*, a professor at the United States Naval Academy filed suit in district court, alleging that he had been disciplined in "violation of his First Amendment right to academic freedom." 718 F. App'x at 186 (per curiam). The Fourth Circuit affirmed the dismissal of his claims, explaining that "[t]he CSRA plainly precludes extrastatutory judicial review of constitutional claims that are asserted before an employee has exhausted his remedies available under the statute"; rather than filing suit in district court in the first instance, the plaintiff in *Fleming* was required to assert his claims before OSC, seeking judicial review only after exhaustion of that administrative process. *Id.* at 188.

Mr. Allen is covered by the CSRA. While FBI employees generally lack remedies under the CSRA, 5 U.S.C. § 7511(b)(8), there is an exception for "preference eligible" FBI employees who have been in their position for more than one year, including military veterans who served during Operation Iraqi Freedom, *id.* §§ 7511(a)(1)(B), (b)(8), 2108(1)(D), (3)(B). Mr. Allen has been a staff operations specialist for well over one year. *Compare* Ex. 2, SF-50, Notification of

Personnel Action (SF-50) (Dec. 13, 2015) (appointing Mr. Allen to the position in 2015), *with* Compl. ¶ 7 (alleging that he still occupies the position). And he is a qualifying veteran because he served in the United States Marine Corps from 2000 to 2005, a period that includes Operation Iraqi Freedom. *See* Ex. 3, Certificate of Release or Discharge from Active Duty (DD-214). Because Mr. Allen has remedies under the CSRA, any review of his constitutional claims could occur only in the MSPB and then in the Federal Circuit—the forums that Congress designated for this purpose. *See Fausto*, 484 U.S. at 449–51; *Elgin*, 567 U.S. at 11.[3]

A recent Fifth Circuit decision, *Zummer v. Sallet*, 37 F.4th 996 (5th Cir. 2022), *cert. denied*, No. 22-443 (U.S. Mar. 20, 2023), aligns with the facts alleged here and is instructive. Michael Zummer was a former FBI agent whose security clearance was first suspended and then permanently revoked after he sent letters to a court disagreeing with certain prosecutorial judgments by a United States Attorney, defying instructions not to do so. *Id.* at 1000–02. Zummer sued. Among other things, he claimed that the FBI had retaliated against him for protected speech and sought an order that his clearance be reinstated. *Id.* at 1002. The district court dismissed the First Amendment retaliation claim, and the Fifth Circuit affirmed, holding that, as a preference-eligible employee, Zummer was covered by the CSRA and required to raise his challenge to the revocation of his security clearance within the remedial scheme that it lays out. *Id.* at 1003–04.

---

[3]    The CSRA's framework would allow Mr. Allen to ultimately raise any constitutional claims in a judicial forum following exhaustion of any timely appeal to the MSPB. He has been indefinitely suspended since February 22, 2022. Ex. 4, SF-50, Notification of Personnel Action (SF-50) (Feb. 22, 2022) (placing Mr. Allen on indefinite suspension under the authority of 5 U.S.C. ch. 75). An indefinite suspension lasting more than 14 days may be appealed to the MSPB with eventual review in the Federal Circuit. 5 U.S.C. §§ 7512, 7513(d), 7703(b)(1); *see also Rogers v. Dep't of Def.*, 122 M.S.P.B. 671, 674 (2015) (concluding that an indefinite suspension lasting longer than 14 days and pending a review of a security clearance is appealable to the MSPB).

The Fifth Circuit rejected Zummer's argument that his claims fell outside the CSRA because the MSPB was forbidden under *Egan* from remedying the revocation of his security clearance. *Zummer*, 37 F.4th at 1004–05. Citing *Fausto* and *Elgin*—decisions in which the Supreme Court upheld the exclusivity of the CSRA notwithstanding the MSPB's position that it could not fully adjudicate the substance of the underlying dispute—the *Zummer* court concluded that the CSRA's "remedial gaps are intentional and are not for courts to fill." *Id.* at 1005 (citation omitted). The situation involving Zummer's security clearance was, the court said, no different. *Id.* at 1007–08.

Indeed, the same principles underlying *Egan*'s holding that the MSPB cannot review the merits of security-clearance decisions also apply to judicial forums. *See Becerra*, 94 F.3d at 148–49. Accordingly, a district court's authority to adjudicate such claims outside the CSRA scheme is no greater than the authority of the MSPB and the Federal Circuit to adjudicate such claims under the CSRA. As a result, channeling such claims exclusively through the CSRA's framework—and requiring petitioner to exhaust his available remedies in those forums—does not deny petitioner any meaningful review that he would otherwise obtain in district court.

This Court should reach a result in accord with *Fleming* and *Zummer* and reject Mr. Allen's attempt to circumvent the CSRA's exclusive procedures by suing in district court in the first instance.

## III.    Mr. Allen's challenge to the adjudicatory guidelines is not ripe.

There is a third jurisdictional reason to dismiss Mr. Allen's claims. They are unripe because the adjudicatory guideline he challenges has yet to be—and may never be—conclusively applied to revoke his security clearance. Ripeness doctrine "originates in the case or controversy constraint of Article III." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013)

(quotation marks omitted). "At bottom, the purpose of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 295 (4th Cir. 2022) (citations and quotation marks omitted). To assess whether a case is ripe, courts balance "[1] the fitness of the issues for judicial decision with [2] the hardship to the parties of withholding court consideration." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013) (quoting *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006)).

With respect to the first prong, a controversy is fit for judicial decision when it is "presented in a clean-cut and concrete form" and where it is "final and not dependent on future uncertainties or intervening agency rulings." *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (citations omitted). At this point, Mr. Allen's controversy with the FBI is neither clean-cut nor final. The lack of concreteness is evident from the "high level of generality" of Mr. Allen's allegations. *Am. Fed. of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 189 (4th Cir. 2021). Nowhere in his complaint is he able to identify the specific protected speech on his part that he contends led to the suspension of his security clearance. *See* Compl. ¶ 13 (alleging that the FBI has not yet "identified any specific statements or actions supporting its contention" that Mr. Allen indicated support for the events of January 6). Indeed, he insists that he has uttered no speech that could conceivably fall within the adjudicatory guideline that he purports to challenge. *See id*. ¶¶ 13, 20–21, 35. Given that Mr. Allen cannot at this stage specify how the challenged guidelines have been applied to him, his claims present "abstract disagreements" that are not fit for judicial

14

resolution. *Wild Va.*, 56 F.4th at 295. Allowing the FBI to complete its investigation may provide the concreteness that Mr. Allen's claims currently lack. If Mr. Allen is determined ineligible to maintain a security clearance, he will receive "as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and other applicable laws permit." Exec. Order No. 12,968, § 5.2(a)(1). And he will have the opportunity to request any documents on which the decision is based, to provide a written response, to appear in person and make a presentation, and to have the decision further reviewed. *Id.* § 5.2(a)(2)–(7).

In addition, until the FBI completes its investigation, the controversy presented by Mr. Allen's claims cannot be called "final and not dependent on future uncertainties or intervening agency rulings." *South Carolina*, 912 F.3d at 730 (citation omitted). Mr. Allen purportedly takes issue with the conditions giving rise to a security concern as set forth in Adjudicatory Guideline A as promulgated by the Director of National Intelligence, but it is not certain that the FBI will ultimately conclude that Mr. Allen's conduct falls within the scope of those conditions. And even if the FBI were to determine that they do fall within the scope of those conditions, it is not certain that his clearance will be revoked. The guideline specifies that the listed conditions "*could*" raise a security concern, not that they will necessarily require revocation in every instance. Ex. 1, *Guidelines* at 8 (emphasis added). Indeed, the same guideline also lists several "[c]onditions that could mitigate security concerns." *Id.* Accordingly, it would be premature to adjudicate the constitutionality of government-wide adjudicatory standards before the FBI has even determined whether Mr. Allen's conduct makes him ineligible to access classified information under those standards. *See Vaughan v. Ky. Army Nat'l Guard*, No. 3-12-cv-0035, 2013 WL 211075, at *6 (E.D. Ky. Jan. 18, 2023) (dismissing challenge to the suspension of a security clearance because "other

administrative actions must occur to determine whether the clearance will be permanently revoked").

Any potential hardship faced by Mr. Allen does not outweigh this significant dearth of concreteness and finality. Hardship "is measured by the immediacy of the threat and the burden imposed on the plaintiff" if judicial consideration is withheld. *Lansdowne,* 713 F.3d at 199 (citation omitted). In the First Amendment context, courts consider whether government action is final enough to have caused a "non-speculative and objectively reasonable chilling effect" on speech. *Am. Fed. of Gov't Emps.*, 1 F.4th at 188 (quoting *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013)). But Mr. Allen has not alleged that the challenged adjudicatory guideline has caused any chilling effect on his speech. In fact, he insists that he has not made any statements and does not hold any views that would fall within the adjudicatory guideline's concerns. *See* Compl. ¶¶ 13, 20–21, 35. To be sure, Mr. Allen alleges that he has been forced to live off savings while on unpaid administrative leave. *Id.* ¶ 25. But nowhere does Mr. Allen suggest that he is financially unable to meet his or his family's needs. Accordingly, any potential harm to Mr. Allen does not outweigh the unfitness of his claims for review.

## IV.    Mr. Allen's claims fail on the merits.

Given the jurisdictional bars to Mr. Allen's claims, the Court should dismiss this case without reaching the merits. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017) ("We find, however, that this Court cannot, as the district court has done, assume subject matter jurisdiction merely to reach a less thorny issue."). But even if there were jurisdiction, Mr. Allen's claims would warrant dismissal on the merits because his pleading fails to articulate a basis for relief as a matter of law.

Most of Mr. Allen's claims rest on his assertion that his clearance was suspended in violation of his speech rights under the First Amendment. Compl. at 6–10 (Counts One, Two, Four,

Five, and Six). When such claims are brought by a federal employee, courts evaluate them under the balancing framework articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See Liverman v. City of Petersburg*, 844 F.3d 400, 409 (4th Cir. 2016). This balancing test recognizes that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom" because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

Under the *Pickering* test, courts first assess whether the employee spoke on a matter of public concern, meaning the speech involves an issue of "social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004) (citation omitted). That question is answered by looking at the "content, form, and context of a given statement." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). But Mr. Allen has not adequately pleaded this element of his First Amendment claims because he does not allege what specific statement provoked the suspension of his clearance. Instead, he disclaims having held or expressed any views that would cause a concern under the adjudicatory guideline he challenges. Compl. ¶¶ 13, 19–21, 35. Without alleging any facts concerning the "content, form, and context" of the statement for which he believes he was improperly suspended, he cannot plausibly show that his First Amendment claims would pass the *Pickering* test. *Garcetti*, 547 U.S. at 418 (holding that if the employee did not speak on a matter of public concern, then "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech") (citation omitted).

If a plaintiff advances to the next step of *Pickering*, courts ask "whether the relevant government entity had an adequate justification for treating the employee differently from any

other member of the general public." *Garcetti*, 547 U.S. at 418 (citation omitted). When making this assessment, the Supreme Court has "consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large." *Waters v. Churchill*, 511 U.S. 661, 673 (1994). Here, if Mr. Allen is alleging a protected speech right to access classified information while showing "sympathy with persons or organizations that advocate, threaten, or use force or violence or use any other illegal or unconstitutional means, in an effort to . . . prevent Federal . . . government personnel from performing their official duties," Ex. 1, *Guidelines* at 8, his First Amendment claims would necessarily fail. The Director of National Intelligence has concluded that such sympathies could raise a security concern about one's allegiance to the United States that may disqualify them from accessing classified information. *Id.* The Supreme Court has recognized that the government "has a compelling interest in protecting . . . the secrecy of information important to our national security," *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980), and that Executive Branch officials like the Director of National Intelligence have the "necessary expertise" to make "[p]redictive judgment[s]" about how to safeguard such information, *Egan*, 484 U.S. at 529. Given these important interests, and the intelligence community's unique expertise in how to protect them, Mr. Allen cannot claim a First Amendment right to hold a top-secret clearance while simultaneously sympathizing with those who would use force to prevent government personnel from performing their duties.

Mr. Allen's vagueness challenge (Count Three) also fails. A policy is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what it prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (citation omitted). "The Court has

. . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498-99 (1982). In the public employment context, policies "are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *See San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)). Thus, in *Arnett*, the Supreme Court upheld an employment standard permitting dismissal for "such cause as will promote the efficiency of the service." *Arnett*, 416 U.S. at 159.

The adjudicatory guideline easily passes this standard. It provides "terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest" in allowing members of the intelligence community to make discretionary predictive judgments about how to safeguard classified information. *U.S. Civil Serv. Comm'n v. Nat'l Assoc. of Letter Carriers AFL-CIO*, 413 U.S. 548, 578–79 (1973). Mr. Allen insists that the provision is vague because it does not provide definitions for the words "association," "sympathy," and "allegiance." Compl. ¶ 41. But those words all have commonly understood definitions that an ordinary person could employ to give meaning to the guideline. *See Lewitus v. Colwell*, 479 F. Supp. 439, 444 (D. Md. 1979) (holding that "[t]he term 'associating with' has a commonly-understood meaning" and is not unconstitutionally vague). Mr. Allen's vagueness challenge therefore fails.

\*  \*  \*

## CONCLUSION

This case should be dismissed.

Dated: March 20, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ADAIR FORD BOROUGHS
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director

 /s/ Johnny Walker
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

BARBARA M. BOWENS (#4004)
Assistant United States Attorney
United States Attorney's Office
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Tel.: (803) 929-3052 / Fax: (803) 252-2759
Email: barbara.bowens@usdoj.gov

*Counsel for Defendant*