UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

MARCUS O. ALLEN,

*Plaintiff,*

v.

CHRISTOPHER A. WRAY,
Director, Federal Bureau of Investigation,

*Defendant.*

Case No. 0:22-cv-04536-MGL

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

As explained in Defendant's motion to dismiss ("Mot."), ECF No. 18, Plaintiff Marcus

Allen's challenge to the suspension of his security clearance by the Federal Bureau of Investigation

("FBI") fails for three separate jurisdictional reasons and also fails on their merits. Mr. Allen's

opposition brief ("Opp'n") fails to cast doubt on Defendant's arguments. The Court should

therefore dismiss the case.

## ARGUMENT

### I.    Mr. Allen's invocation of the Constitution alone does not save him from *Egan*.

Mr. Allen's challenge to the FBI's suspension of his security clearance is unreviewable

because, under *Egan*, decisions about who may access classified information are committed to the

Executive Branch. Mot. at 6–9.

Mr. Allen asserts at length that, as a general matter, colorable constitutional claims are not

altogether foreclosed by *Egan*. Opp'n at 5–8. Defendant does not contend otherwise. Instead,

Defendant's argument focused on the Fourth Circuit's rule that even a constitutional claim is

unreviewable if it "merely challenges the merits" of a security clearance decision. Mot. at 8–9

(quoting *Hegab v. Long*, 716 F.3d 790, 795 (4th Cir. 2013)). As Defendant explained, that is what

Mr. Allen's claims do. They ask the Court to second-guess the soundness of a determination by the

Director of National Intelligence that a security risk is presented by persons who sympathize with those who use violence against the government. *Id.* at 9. And the claims are founded upon allegations that the FBI was simply wrong to suspend Mr. Allen's clearance because he purports not to have made the statements the FBI attributes to him. *Id.* (citing Compl. ¶¶ 13, 19–21, 35). That puts Mr. Allen in the same boat as the plaintiff in *Hegab*, whose constitutional claims the Fourth Circuit rejected because they were "conclusory" and "rested on his disagreement with the . . . decision on the merits." *Hegab*, 716 F.3d at 796. Because he is preoccupied with a straw man about the reviewability of constitutional claims generally, Mr. Allen fails to acknowledge *Hegab*'s holding about the unreviewability of conclusory constitutional claims or to meaningfully rebut Defendant's demonstration that the claims here are unreviewable pursuant thereto. Mr. Allen simply insists without elaboration that he challenges the "standards and process" surrounding the suspension of his clearance, Opp'n at 8, but he cites nothing in his complaint supporting that conclusory assertion. Defendant has shown otherwise; his claims attack the merits of the government's national security judgments and are therefore unreviewable.

Mr. Allen is also incorrect to rely on *Webster v. Doe*. Opp'n at 5–8. That case emphasized that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." 486 U.S. 592, 603 (1988). But the nonreviewability principle established by *Egan* does not derive from any congressional preclusion of review. Rather, it is founded upon the "constitutional investment of power in the President" to serve as commander in chief of the military, which "exists quite apart from any explicit congressional grant." *Egan*, 484 U.S. at 527. *Webster*'s instruction about congressional intent therefore does not come into play.

## II.    The CSRA covers Mr. Allen's claims.

Mr. Allen's claims also fall outside of this Court's jurisdiction because his exclusive means of challenging the suspension of his security clearance is the review process set forth in the Civil Service Reform Act ("CSRA"), which does not permit him to file an action directly in this Court. Mot. at 10–13.

Mr. Allen counters that the CSRA does not cover his claims and that "a federal district court provides the only possible forum for judicial review." Opp'n at 8. He is incorrect. Mr. Allen's argument is apparently premised on his contention that the suspension of a security clearance is not one of the actions enumerated in § 7512. *Id.* But he ignores that a suspension of employment lasting longer than 14 days is in fact listed in that section, 5 U.S.C. § 7512(2), and that the Merit Systems Protection Board ("MSPB") has concluded that a suspension of a security clearance accompanied by a longer-than-14-day suspension of employment may be reviewed under § 7512. *See Rogers v. Dep't of Def.*, M.S.P.R. 671, 674 (M.S.P.B. 2015). Though the motion to dismiss clearly cited this authority, Mot. at 12 n.3, Mr. Allen simply ignores it. There is no dispute that Mr. Allen has been suspended longer than 14 days, *see* Compl. ¶ 12, which means he could have appealed to the MSPB.

Mr. Allen also ignores that § 7512 is not the only avenue for review under the CSRA. Even if his suspension were not reviewable under § 7512—and, again, the MSPB says that it is—he could challenge it through the Office of Special Counsel under Chapter 23, which permits covered employees to challenge alleged "prohibited personnel practices," including an action that fails to accord "proper regard for . . . constitutional rights." 5 U.S.C. § 2301(b)(2); *see also Payne v. Biden*, 62 F.4th 598, 605 (D.C. Cir. 2023) (describing the processes for challenging personnel action

sunder Chapters 75 and 23). Mr. Allen fails to acknowledge his option of appealing under this provision.

The authorities cited by Mr. Allen do not apply to his situation because they address situations where an employee would be entirely deprived of any judicial review over constitutional claims, which is not the case here. For example, Mr. Allen relies heavily on *McCabe v. Barr*, where the government conceded that the CSRA does not foreclose judicial review of constitutional claims. Opp'n at 9 (citing *McCabe v. Barr*, 490 F. Supp. 3d 198, 212 (D.D.C. 2020)). But in *McCabe*, the plaintiff was not preference eligible, and thus had no recourse under the CSRA. *See* 490 F. Supp. 3d at 211. The same was true of the FBI employee at issue in *Lamb v. Holder*, 82 F. Supp. 3d 416 (D.D.C. 2015). *See* Opp'n at 10. And the judicial employees in *Strickland*, another case that Mr. Allen relies on, similarly did not enjoy appeal rights under the CSRA. *See* Opp'n at 9–10; *see also Strickland v. United States*, 32 F.4th 311, 376 (4th Cir. 2022) (resting its holding on a determination that the plaintiff would be "deprived of a forum for meaningful review of her claims by judicial officers"). Mr. Allen, by contrast, concedes that he is preference eligible, Opp'n at 8, and may therefore pursue his claims through the CSRA to eventually obtain judicial review in the Federal Circuit. *See Payne*, 62 F.4th at 601. The cases that he cites are therefore inapplicable.

Mr. Allen also appears to argue that his claims are not covered by the CSRA because the MSPB would be foreclosed from reviewing them under *Egan*. Opp'n at 8–9 (citing *Biggers v. Dep't of Navy*, 745 F.3d 1360, 1362 (Fed. Cir. 2014); *Hesse v. Dep't of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000)). That is an odd argument for Mr. Allen to make, because the principles underlying *Egan*'s holding that the MSPB cannot review the merits of security-clearance decisions also apply to judicial forums, including this one. *See, e.g., Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996). Thus, by arguing that *Egan* would foreclose review by the Board and, eventually, the Federal

Circuit, Mr. Allen effectively concedes that it also forecloses review here. In any event, because *Egan* would apply both here and in the Federal Circuit, there is no reason that Mr. Allen's claims should be exempted from the CSRA's exclusive channeling provisions. *See Zummer v. Sallet*, 37 F.4th 996, 1007–08 (5th Cir. 2022). [1]

## III.     Mr. Allen's claims are unripe.

Mr. Allen's claims are also unripe because the FBI has not made a final decision about whether the challenged adjudicatory guideline requires the suspension of Mr. Allen's security clearance. Mot. at 13–16.

Mr. Allen maintains that his speech claims need no further factual development before they can be judicially reviewed. Opp'n at 12–13. But he fails to explain how the Court may evaluate those claims without such basic information as the specific speech at issue or any final articulation of the government's interest to be weighed against his right to make such speech. *See* Mot. at 14–15. Until the FBI concludes its investigation and issues a final decision providing these crucial details, Mr. Allen's claims are based only on "abstract disagreements" and are not fit for judicial resolution. *Id.* (citing *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 295 (4th Cir. 2022)).

Mr. Allen mentions financial hardship, Opp'n at 12–13, but he has submitted no evidence of such alleged hardship. And his complaint's brief allegation of financial hardship is conclusory and fails to describe any burden, much less one that might outweigh the need for finality on the

---

[1]     Mr. Allen calls *Zummer* an "outlier" because it held that the CSRA can entirely foreclose judicial review of constitutional claims in federal court even where it affords an employee no potential remedy at all. Opp'n at 9. But *Zummer*'s support for that proposition is not the proposition for which Defendant cited it. Defendant cited *Zummer* only to show that challenges to a decision about a security clearance are generally covered by the CSRA. Here, for the reasons discussed above, that would not foreclose judicial review of Mr. Allen's constitutional claims, which would ultimately be channeled to the Court of Appeals for the Federal Circuit. *See Payne*, 62 F.4th at 601 (describing the paths to judicial review under the CSRA).

FBI's application of the challenged adjudicatory guideline. *See* Mot. at 16. And Mr. Allen still does not contend that his speech rights will be chilled while awaiting a decision from the FBI. *Id.*

**IV.     Mr. Allen fails to support his claims on the merits.**

Mr. Allen's claims also fail on the merits as pleaded, and his opposition, which largely repeats his complaint, fails to show otherwise.

In particular, Mr. Allen does not even attempt to argue that his free-speech claims could satisfy the balancing test applicable to speech by public employees. Mot. at 16–17 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). That is unsurprising because Mr. Allen does not allege that he engaged in any protected speech, and in fact denies making any statements covered by the challenged adjudicatory guideline. *Id.*; Opp'n at 15. Without this information, Mr. Allen cannot show that he spoke on a matter of public concern or that the justifications for his suspension pending review of his security clearance are insufficient to overcome his right to make any specific speech. Mot. at 17–18.

On the other side of the balancing equation, Mr. Allen incorrectly characterizes the government interest underlying the adjudicatory guideline as "unsubstantiated concerns of 'national security.'" Opp'n at 14. To the contrary, the interest at stake is the safeguarding of classified information, which the Supreme Court has recognized as "compelling." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980). And the Director of National Security, in an exercise of his "expertise" to make "[p]redictive judgment[s]" about how best to safeguard classified information, *Egan*, 484 U.S. at 529, has determined that a security risk is presented by those who sympathize with persons who use violence to disrupt the government. Mot. at 18. Mr. Allen does not attempt to argue that such an interest is not compelling or that it does not outweigh his interest in any particular speech.

Mr. Allen's vagueness argument is also flawed. From the outset, he fails to acknowledge that public employment policies are not void for vagueness so long as "persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." Mot. at 19 (quoting *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992)). He does not explain why the adjudicatory guideline at issue here does not pass that low bar. Nor does he contest that the adjudicatory guideline is more specific than the standard permitting dismissal for "such cause as will promote the efficiency of the service," which survived a vagueness challenge in the Supreme Court. *See id.* at 19 (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)).

The cases Mr. Allen cites do not extend as far as he tries to stretch them. Unlike the loyalty oath in *Baggett v. Bullitt*, the adjudicatory guideline does not require employees with security clearances to "promote . . . undivided allegiance" to the United States. 377 U.S. 360, 371 (1964) Instead, it sets forth enumerated conditions that might indicate a lack of allegiance and therefore give rise to a security concern. Mot., Ex. 1 at 8. And in *Cramp v. Board of Public Instruction*, the Court distinguished terms like "aid" and "support" from terms like "affiliation" and "advocacy" (which are similar to the terms "association" and "sympathy"), deeming the latter terms "susceptible of objective measurement." 368 U.S. 278, 286 (1961). Most critically, the adjudicatory guideline does not entail criminal penalties, further distinguishing it from the oaths in *Baggett* and *Cramp*, which were taken under penalty of perjury. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982) (noting the greater tolerance for provisions imposing civil rather than criminal penalties).

Mr. Allen's overbreadth argument similarly rests on his insistence that the terms "association," "sympathy," and "support" could be broadly construed to punish activities like attending the same house of worship or expressing pity for another. Opp'n at 14–15. But it is not

enough for Mr. Allen to "conceive of some impermissible applications," he must demonstrate that the overbreadth is "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Miselis*, 972 F.3d 518, 531 (4th Cir. 2020) (citations omitted). He has failed to do so.

## CONCLUSION

This case should be dismissed.

Dated: May 12, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ADAIR FORD BOROUGHS
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director

  /s/ Johnny Walker
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

BARBARA M. BOWENS (#4004)
Assistant United States Attorney
United States Attorney's Office
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Tel.: (803) 929-3052 / Fax: (803) 252-2759
Email: barbara.bowens@usdoj.gov

*Counsel for Defendant*